ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-40063-02-JAR |
| ) | |
| JOSEPH CRONIN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Joseph Cronin's Motion to Suppress Statements and Tangible Evidence (Doc. 112). The parties have fully briefed the motion and the Court held an evidentiary hearing on March 24, 2008. The Court has thoroughly considered the parties' briefs and the evidence presented at the hearing, and is now prepared to rule. For the reasons stated below, defendant's motion is denied.

*Factual Background*

On November 27, 2006, the Court conducted an evidentiary hearing on a motion to suppress filed by co-defendant Luke Russell. That motion sought to suppress evidence obtained from the search of a van occupied by defendants on June 20, 2005. At the hearing, Reese Hays, a park ranger for the Kansas Department of Wildlife,[1] testified. At the March 24, 2008 hearing, the Court admitted as evidence the transcript from the November 27, 2006 hearing.

---

[1] Hays testified that he had been trained by the Kansas Highway Patrol and had previously worked for the Kansas Highway Patrol and for the Hill City Police Department. Since the time of the search, Hays obtained a law degree, passed the bar exam, and is now employed by the United States Air Force as an Assistant Judge Advocate General.

The Court made certain factual findings in its Memorandum and Order denying defendant Russell's motion to suppress (Doc. 45), and incorporates those findings at this time. In providing the factual background for the instant motion, the Court supplements Hays' earlier testimony with his testimony at this most recent evidentiary hearing.

Reese was patrolling Campground One at Clinton Lake State Park immediately following the Wakarusa Music Festival ("the festival") on June 20, 2005. While patrolling the campground, Hays was driving an official vehicle, was dressed in uniform and was carrying a weapon. At approximately 1:15 p.m., Hays observed six people underneath a blue tarp propped up by a van and a tree line. Hays observed defendant Joseph Cronin fill up a balloon from a blue nitrous oxide tank and inhale the contents of the balloon. As he approached the group, Hays could smell burnt marijuana. Hays told the individuals to "stay put" and to go to the side of the van. Then, Cronin went to a nearby golf cart and tried to start it, but Hays stopped him, took the keys, and ordered him to sit down. At that point, Hays ordered everyone to stay where they were, on the other side of the van, and to sit down.

Although the van doors were closed, the window was partially open and when Hays approached the van, he could smell a strong odor of raw marijuana coming out of the vehicle. Hays requested back-up from the Douglas County Sheriff's office and while he waited for their arrival, he verified the identifications of the individuals outside the van.

When the three deputies arrived, they watched the individuals outside the van while Hays searched the site and the van. At this time, two of the individuals ran away and the officers did not pursue them. When Hays began searching the van, he observed several bags, backpacks, and various clothing items. He removed these items from the van and held each item up, asking the

group who each item belonged to. At one point, Hays asked about a "brownish/reddish" fanny pack and Cronin responded "that's mine." Hays searched the fanny pack and found a "minuscule" amount of green vegetation that later tested positively as marijuana, and fifteen loose pills, along with various concert mementos. Cronin identified several other bags in the van at this time and a few days later, on June 23rd, he came to the Park Ranger's office to collect these bags.

The officers ultimately discovered a voluminous amount of contraband in the van and in the containers. The items included blotter papers with hundreds of dosage units of LSD, thousands of grams of MDMA, various pills, thousands of dollars in cash, marijuana, baggies, and multiple sets of scales. At this point, the remaining individuals outside the van were handcuffed.

*Discussion*

Cronin moves to suppress his statement identifying the fanny pack, as well as the contents of the fanny pack, because Hays failed to Mirandize him before eliciting the statement. A law enforcement officer's "failure to administer *Miranda* warnings prior to a custodial interrogation 'creates a presumption of compulsion,' and the confession is inadmissible with no need for the 'time consuming and difficult enquiry into voluntariness.'"[2] For the *Miranda* safeguards to apply, the individual must (1) be in custody, and (2) be subject to questioning that meets the legal definition of 'interrogation.'"[3] The government bears the burden of showing that

---

[2] *United States v. Pettigrew*, 468 F.3d 626, 635 (10th Cir. 2006) (quoting *Oregon v. Elstad*, 470 U.S. 298, 307 (1985); *United States v. Patane*, 542 U.S. 630, 646 (2004) (Souter, J., dissenting)), *cert. denied*, 127 S. Ct. 1343 (2007).

[3] *United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007); *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994) (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993)).

3

these rights were waived and the voluntariness of the statements.[4]

The parties dispute whether Cronin was in custody when he was asked to identify the fanny pack.[5] A person is in "custody" when he has been arrested or his freedom is curtailed to a degree associated with a formal arrest.[6] The relevant inquiry for determining whether an individual is in "custody" is whether a reasonable person in that position would "believe [his] freedom of action had been curtailed to a 'degree associated with formal arrest.'"[7] "The determination of custody, from an examination of the totality of the circumstances, is necessarily fact intensive."[8]

In this Court's Memorandum and Order denying defendant Russell's motion to suppress, the Court made the following findings about whether the encounter with Hays was reasonable:

> After Hays told the group to stay put, the encounter became an investigative detention. Still, Hays developed reasonable suspicion that defendant and his companions possessed illegal contraband, and could thus temporarily detain them for related questioning. Hays testified that when he first approached the campground, he noticed one individual inhaling from a balloon

---

[4] *Missouri v. Seibert*, 542 U.S. 600, 609 n.1 (2004) (plurality).

[5] To the extent the government argues that Hays' question did not constitute interrogation, the Court disagrees. "Interrogation" includes express questioning, as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). Questions about identity, age, and address usually do not constitute interrogation. *See, e.g.*, *United States v. Washington*, 462 F.3d 1124, 1132–33 (9th Cir. 2006). The government urges that the questions about ownership of certain containers in the van are permissible during an investigatory detention. But this was not a general question normally attendant to arrest and custody. Instead, it was likely to elicit an incriminating response by identifying the fanny pack, located inside a van containing narcotics, as belonging to him

[6] *See Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam); *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam).

[7] *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993), *cert. denied*, 515 U.S. 1168 (1995) (quoting *Beheler*, 463 U.S. at 1125; *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)); *see Revels*, 510 F.3d at 1273.

[8] *Griffin*, 7 F.3d at 1518.

4

> connected to a nitrous oxide tank. He stated that in his experience and training as an officer, he recognized the canister as nitrous oxide because it was blue. This, coupled with the odor of burnt marijuana in the immediate areas where the individuals were sitting under the tarp, provided Hays with sufficient evidence to allow a reasonable suspicion of criminal activity.
> . . . .
>
> Moreover, shortly after initiating the investigative detention, Hays approached the partially open car window and smelled the odor of raw marijuana coming from inside the passenger compartment of the vehicle, which gave Hays probable cause to search.[9]

Cronin argues that these prior findings dictate a finding on the instant motion that Cronin was not free to leave at the moment Hays told the individuals to "stay put." Indeed, the government states in its response that "[h]aving been retrieved from the golf cart as he attempted to flee, Cronin was not free to leave this investigative detention."[10]

But the analysis required under the Fourth Amendment is separate from the custody analysis for purposes of *Miranda*. The Tenth Circuit has recently explained that Supreme Court and Tenth Circuit precedent "have definitively foreclosed any attempt to equate the two analytically distinct inquiries."[11]

> In short, both *Berkemer* and *Perdue* establish that merely because a particular police-citizen encounter can be neatly packaged under the label "investigatory detention" for purposes of the Fourth Amendment, it does not necessarily follow that police are freed of their obligation to inform the citizen of her rights under *Miranda* in appropriate cases. Consequently, and counter to

---

[9](Doc. 45 at 5–6.)

[10](Doc. 118 at 7.) *See United States v. Anglin*, 438 F.3d 1229, 1231 (10th Cir. 2006) (explaining that the custody question is based on an objective reasonable person standard and, that "[i]t is of no moment that the officer testified at trial that the Defendants were under arrest and not free to leave.").

[11]*Revels*, 510 F.3d at 1274 (citing *Berkemer*, 468 U.S. at 440; *United States v. Perdue*, 8 F.3d 1455, 1461–66 (10th Cir. 1993)).

>the government's argument, whether the police subjected Revels to
>a lawful investigative detention in this case is not dispositive of
>whether the officers should have advised Revels of her *Miranda*
>rights.[12]

In considering, under the totality of the circumstances, whether a reasonable person in Cronin's position would have understood his freedom was restricted to a degree consistent with formal arrest, the Court looks to the following factors: (1) whether the suspect is made aware he is free to refrain from answering questions and may end the interview; (2) the nature of the questioning; and (3) whether the interview was conducted in a "police dominated" atmosphere.[13]

Under the first factor, Hays asked the group of detained individuals to identify a number of different containers that he removed from the van during his search without advising them that they were free to refrain from answering, or that they could end the questioning at any time.  But none of the individuals identified the duffel bags that ultimately were found to contain narcotics and cash.

Second, the nature of the questioning does not necessarily point toward custodial circumstances either.  While the questions regarding ownership of the bags inside the van go beyond the questioning attendant to an investigatory detention, they were not accusatory in nature, nor were Cronin and his friends separated during the questioning.[14]

Third, the circumstances here do not amount to a "police dominated" atmosphere. Circumstances tending to show that police are in "full control" of the questioning environment

---

[12]*Id.*

[13]*Griffin*, 7 F.3d at 1518–19.

[14]*See Revels*, 510 F.3d at 1276 (finding nature of questioning pointed toward custody when defendant was separated from her boyfriend and children and then confronted with a seized bag of cocaine).

are:

> separation of the suspect from family or colleagues who could offer moral support; isolation in nonpublic questioning rooms; threatening presence of several officers; display of a weapon by an officer; physical contact with the subject; and an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled.[15]

While several officers were present during the search of the van, Hays testified that none of them ever displayed a weapon or made physical contact with Cronin prior to the questioning. There is no evidence that Cronin was separated from his friends, or isolated in any way. There is likewise no testimony regarding the tone of voice, or manner in which Hays asked the individuals to identify the containers from the van. In fact, two of the detained individuals ran away and were not pursued by the officers. It was not until the officers discovered narcotics in the van that the remaining suspects were handcuffed. Under the totality of the circumstances, the Court is unable to find that a reasonable person in Cronin's position would have considered himself under such a degree of restraint as to amount to a formal arrest when he was asked to identify the fanny pack at issue.

Even if the Court finds that Cronin's statements are inadmissible due to the failure to provide him with *Miranda* warnings, the "fruit of the poisonous tree" doctrine does not apply to voluntary statements made to police when no *Miranda* warnings are given.[16] There is no evidence indicating that his statements were anything but voluntary. Therefore, at most, this Court could suppress only Cronin's statement that the fanny pack belonged to him but not the

---

[15] *Id.* at 1519.

[16] *United States v. Lara-Garcia*, 478 F.3d 1231, 1235–36 (10th Cir. 2007) (citing *United States v. Patane*, 542 U.S. 630 (2004); *United States v. Phillips*, 468 F.3d 1264, 1265 (10th Cir. 2006)).

fanny pack and its contents.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Cronin's Motion to Suppress Statements and Tangible Evidence (Doc. 112) is **denied**.

**IT IS SO ORDERED**.

Dated this 27th day of March, 2008.

                                                        S/ Julie A. Robinson
                                                        Julie A. Robinson
                                                        United States District Judge

Memorandum and Order Denying Motion to Suppress, *United States v. Cronin*, 06-40063-02-JAR